UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

CAPTIVA RX, LLC, doing business as )
CAPTIVA PHARMA, and )
RHETT DANIELS )
 )
    Plaintiffs, )
 ) CASE NO.:
v. )
 )
JAMES JOSEPH DANIELS, JR., )
 )
    Defendant. )
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Captiva RX, LLC, doing business as Captiva Pharma ("Captiva") and Rhett Daniels, assert the following Complaint against Defendant James Joseph Daniels, Jr., and allege as follows.

**NATURE OF THE ACTION**

1. This diversity action seeks damages exceeding $75,000.00 resulting from Defendant's tortious acts against Plaintiffs.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the parties are completely diverse and the amount in controversy exceeds $75,000.00.

3. Venue lies in this district pursuant to 28 U.S.C. § (a) and (b) in that a substantial part of the events or omissions giving rise to this claim occurred in this district.

**THE PARTIES**

4. Plaintiff Rhett Daniels is an individual residing in Ft. Myers, Florida.

5. Rhett Daniels is the President of Plaintiff Captiva Rx, LLC ("Captiva").

1

6. Captiva is a limited liability company formed and existing under the laws of the State of Florida, having a principal place of business at 5237 Summerlin Parkway, Suite 407, Fort Myers, Florida.

7. All members of Captiva are Florida residents.

8. Upon information and belief, Defendant James Joseph Daniels, Jr. ("Defendant" or "Jimmy Daniels") is a resident of the State of Georgia and resides at 145 Castlegate Road, Macon, Georgia.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

9. Defendant Jimmy Daniels is an Assistant District Attorney in Bibb County, Georgia, and is Plaintiff Rhett Daniels's brother.

10. Rhett Daniels and Jimmy Daniels have been engaged in a long-standing family dispute.

11. The dispute stems from a variety of conflicts between the brothers.

12. One conflict occurred when Rhett Daniels paid Jimmy Daniels, an attorney, to represent his company, ViaDiem LLC, in a business dispute in or about August 2010.

13. Jimmy Daniels did not perform the legal services and did not return the retainer.

14. Because the legal services were not performed, ViaDiem suffered significant financial injury.

15. This issue caused conflict between the brothers.

16. The conflict between the two brothers escalated in or around October 2010, when Jimmy Daniels sent threatening messages to Rhett Daniels and his wife, Elizabeth Trezza, and accused their marriage of being fraudulent and nothing more than a business arrangement.

17. A significant part of the family dispute also stems from Rhett Daniels's suspicions that his daughter was abused in 2010 by one of Jimmy Daniels's children.

18. This dispute escalated in November 2010 an eventually involved heated email exchange among the entire Daniels family, including Rhett and Jimmy's father and stepmother.

19. Following these incidents, and specifically to create physical separation with his family, Rhett Daniels moved to Ft. Myers, Florida, with his wife and children in December 2010.

20. At about that time, Rhett Daniels reorganized his pharmaceutical company into a new company called Captiva Rx, LLC, which registered as a Florida limited liability company.

21. As part of his prior involvement with ViaDiem LLC, Jimmy Daniels acquired knowledge of the Rhett Daniels's business dealings and relationships, including those of Captiva.

22. Captiva's only significant customer was Macoven Pharmaceuticals, LLC ("Macoven").

23. In or around June 2012, Captiva entered into a highly lucrative agreement with Argent Development Group, LLC ("Argent") to exclusively develop products for Argent's women's health line.

### JIMMY DANIELS' INVOLVEMENT IN PLAINTIFF'S INVOLUNTARY COMMITMENT

24. In early July 2012, Rhett Daniels was informed by his father that Jimmy Daniels was mentally unstable and suicidal.

25. Jimmy's family, including his sister, had been sufficiently concerned about his mental health that they took his gun from him.

26. On or about July 14, 2012, Jimmy's and Rhett's mother phoned Jimmy in Georgia and informed him that the brothers' father was in the process of driving from Orlando to the Ft. Myers home of Rhett Daniels to talk to Rhett because she said he was very upset and depressed.

27. The father had called Ft. Myers or Lee County law enforcement and asked them to check on Rhett Daniels.

28. Lee County Sheriff's Officers arrived at Rhett Daniels' home and determined that Rhett was not a danger to himself or others.

29. These law enforcement officers were in the process of leaving Rhett's house when City of Ft. Myers police officers arrived.

30. Without any personal knowledge of the events occurring at the home of Rhett Daniels, Jimmy Daniels had telephoned law enforcement in Fort Myers, Florida, and stated that Rhett Daniels needed to be arrested.

31. Upon information and belief, Jimmy Daniels informed the Ft. Myers police that he was an Assistant District Attorney in Georgia in order to ensure his call was prioritized and immediately acted upon.

32. Upon information and belief, Jimmy Daniels inserted himself into the situation for no purpose other than spite.

33. Upon information and belief, Jimmy Daniels called the Ft. Myers police to ensure Rhett Daniels' involuntary commitment, knowing that an involuntary commitment would cause Rhett Daniels great emotional distress, damage to reputation, and loss of business.

34. Despite the fact that the Lee County Sheriff's Officers were in the process of leaving Rhett Daniels home, due to Jimmy Daniels's phone call to the Ft. Myers police department, Rhett Daniels was removed from his residence by the Ft. Myers police and "Baker-Acted."

35. Jimmy Daniels's call(s) with police personnel in Florida related to these events were entirely unrelated and unconnected to any of Jimmy Daniels's proper or official duties or job responsibilities as Assistant District Attorney of Bibb County.

36. Rhett Daniels was transported against his will to Lee County Vista hospital ("Vista").

37. Upon his arrival at Vista, Rhett Daniels was locked in a small room.

38. Rhett repeatedly asked why he was being held and asked if he could leave. These requests were denied.

39. After being held for two nights without being seen, Rhett Daniels was finally evaluated by a psychiatrist. The treating physician at Vista told Rhett Daniels that he could not release him because the allegations in the police report were so terrible. Those allegations were derived largely from Jimmy Daniels.

40. Rhett Daniels spent a total of 11 days in involuntary commitment.

41. Due to the Defendant's actions on July 14, 2012, and in line with Jimmy Daniels' intent, Rhett Daniels was unable to conduct business as manager of Captiva while he was involuntarily committed.

42. Captiva was forced to tell close business partners the facts surrounding Rhett Daniels's work absence to explain Captiva's unresponsiveness to emails.

43. The facts surrounding Rhett Daniels's work absence were very difficult to explain, and some of Captiva's business partners assumed that Rhett Daniels was too unstable to be a reliable business partner.

44. Several of Captiva's business partners, including their most important partner, Macoven, lost confidence in Captiva's businesses after the events of July 14, 2012. Based on

previous sales trends, the Macoven account would have provided Captiva an estimated $30,000 to $80,000 per month in revenues.

45. Captiva was unable to complete two product deals with Argent, which were scheduled to be finalized in July 2012. As a result of these missed deals, Argent stopped doing business with Captiva. Losing Argent as a business partner caused Captiva to forfeit an estimated $2,000,000.00 in sales per year.

46. Captiva lost all business partners that it had as of July 14, 2012, except one.

47. In addition to the loss of business revenue, Rhett Daniels was injured by the wrongful involuntary commitment in the form of ongoing emotional distress.

48. Specifically, as a result of the hospitalization, Rhett Daniels has suffered from and has been diagnosed with incurable erectile dysfunction.

## JIMMY DANIELS' STALKING CHARGE

49. Following his release, Rhett Daniels became increasingly concerned that his brother, Jimmy Daniels, had abused his position of office to cause Rhett's involuntary commitment.

50. Rhett Daniels was also concerned that Jimmy Daniels had abused his authority as a result of his mental instability, which had been relayed to Rhett Daniels by family members just days prior to the July 14 incident.

51. Rhett Daniels therefore became concerned that Jimmy Daniels might not be of the right mental state so as to properly conduct his duties as Bibb County Assistant District Attorney.

52. On August 2, 2012, Rhett Daniels e-mailed the Georgia Bar and notified the Bar of his concerns relating to Jimmy Daniels' mental health.

53. Rhett Daniels cc'ed Jimmy Daniels on the e-mail.

54. On August 17, 2012, Rhett Daniels sent an e-mail to numerous friends and family members and to Jimmy Daniels's office asking that they retain all emails relating to Jimmy's acceptance of retainer and letter non-performance on the August 2010 ViaDiem matter.

55. This e-mail was sent because Rhett Daniels was contemplating a civil action and/or bar complaint against Jimmy relating to that matter.

56. Rhett Daniels cc'ed Jimmy Daniels on the e-mail.

57. Neither the August 2 nor the August 17 e-mails could reasonably be interpreted as any type of threat to the physical safety of Jimmy Daniels.

58. Rather, both e-mails were clearly related to potential bar complaints and civil lawsuits.

59. At no point has Rhett Daniels ever threatened Jimmy Daniels or any of his family members with any type of physical harm.

60. During 2011 and 2012, Rhett Daniels did not ever have any physical contact with Jimmy Daniels, or come anywhere near Jimmy or his family. Such contact was impossible in light of the fact that Rhett Daniels live in Ft. Myers Florida and did not travel to Macon, where Jimmy Daniels lived.

61. Nonetheless, on August 17, 2012, Jimmy Daniels filed a police report against Rhett Daniels claiming that Rhett had been sending emails "intended only for the purpose of harassment and intimidation" such that Jimmy and his family were in "reasonable fear" of their "personal safety."

62. The August 17, 2012, police report was entirely unrelated and unconnected to any of Jimmy Daniels's proper or official duties or job responsibilities as Assistant District Attorney of Bibb County.

63. Upon information and belief, Jimmy was not in any fear whatsoever for the personal safety of himself or his family.

64. Upon information and belief, Jimmy made these allegations as retribution for Rhett's August 2 and August 17 emails.

65. Upon information and belief, Jimmy made these allegations as additional leverage in the family dispute with Rhett Daniels.

66. Rhett Daniels was unaware of the existence of the August 17, 2012, police report until January 23, 2014.

67. On January 23, 2014, Rhett Daniels was arrested by Transportation Security Administration officers while he was on a commercial airplane waiting to depart Hartsfield Jackson Airport in Atlanta.

68. The arrest was solely in connection with the August 17, 2012, police report.

69. Rhett Daniels was later charged by the Bibb County Solicitor's Office with criminal stalking, a misdemeanor.

70. Despite the total lack of probable cause, the Bibb County Solicitor's Office has not dropped the charge.

71. Rhett Daniels has paid a criminal defense attorney tens of thousands of dollars to defend him against the charge. The charge remains pending.

### FIRST CLAIM FOR RELIEF
**(Tortious Interference with Business Relationship by Captiva)**

72. Plaintiff repeats and realleges the allegations set forth in Paragraph 1-71 of this Complaint.

73. Plaintiff Captiva had business relationships with Macoven and Argent at the time when Defendant sent threatening messages to Rhett Daniels and Elizabeth Trezza and when

Defendant made false statements to law enforcement.

74. Defendant had knowledge of Plaintiff's business relationships, because he was previously hired to work for Plaintiff's predecessor company, ViaDiem.

75. Defendant knew his conduct would interfere with Plaintiff's business relationships. Defendant's actions were unjustified and malicious, because he knew that his statements to law enforcement were false.

76. Plaintiff's business agreements with Macoven and Argent would have continued if Defendant had not interfered.

77. Plaintiff was damaged, because it lost important business partners and other business relationships and agreements were not completed or otherwise negatively affected.

78. Plaintiff suffered damages in excess of $75,000.00.

## SECOND CLAIM FOR RELIEF
**(Defamation by Rhett Daniels)**

79. Rhett Daniels repeats and realleges the allegations set forth in Paragraph 1-78 of this Complaint.

80. Jimmy Daniels has negligently and/or recklessly made false and defamatory statements of fact regarding Rhett Daniels.

81. These statements were made in an August 17, 2012, sworn statement form for the Bibb County Sheriff's Office.

82. The existence of these statements could not have been reasonably known to Rhett Daniels until January 23, 2014, when Rhett was arrested.

83. Rhett Daniels has been damaged as a result of these statements.

## THIRD CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress by Rhett Daniels)

84. Rhett Daniels repeats and realleges the allegations set forth in Paragraph 1-83 of this Complaint.

85. Jimmy Daniels has engaged in intentional and reckless conduct by making statements to Ft. Myers and/or Lee County law enforcement about which he had no personal knowledge and with the intent to force the involuntary commitment of Rhett Daniels.

86. This conduct was extreme and outrageous.

87. This conduct has caused Rhett Daniels severe emotional distress.

## FOURTH CLAIM FOR RELIEF

### (False Imprisonment by Rhett Daniels)

88. Rhett Daniels repeats and realleges the allegations set forth in Paragraph 1-87 of this Complaint.

89. Jimmy Daniels made false statements to law enforcement, intending to induce law enforcement to detain Rhett Daniels.

90. Law enforcement did, in fact, detain Rhett Daniels.

91. This detention was unlawful.

92. This detention resulted in the deprivation of Rhett Daniels's personal liberty.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, it is respectfully requested that this Court grant Plaintiff judgment as follows:

a) That the Court grant an accounting against Defendant, and Plaintiff be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including all damages sustained by Plaintiff as a result of Defendant's tortious acts

b) That the Court enjoin Defendant from further contact and harassment of Plaintiff

c) That Plaintiff shall have such other and further relief as this Court deems proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 14, 2014

Respectfully submitted,

 /s/ W. Scott Creasman_____
W. Scott Creasman
Georgia Bar No. 194860
screasman@taylorenglish.com
Amanda G. Hyland
Georgia Bar No. 325115
ahyland@taylorenglish.com
Taylor English Duma LLP
Suite 400
1600 Parkwood Circle
Atlanta, GA 30339
Telephone: (770) 434-6868
Facsimile (770) 434-7376

*Counsel for Plaintiffs*