IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CAPTIVA RX, LLC, doing business as CAPTIVA PHARMA, and RHETT DANIELS,<br><br>    Plaintiffs,<br><br>    v.<br><br>JAMES JOSEPH DANIELS, JR.,<br><br>    Defendant. | CIVIL ACTION NO. 5:14-CV-265 (MTT) |

## ORDER

This matter is before the Court on the Defendant's motion for leave to file an amended answer (Doc. 8) and his motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Doc. 9).  The Plaintiffs consent to the Defendant's motion to file an amended answer, and that motion is **GRANTED**.  Because the Defendant's motion to dismiss was filed more than three weeks after he filed his answer, the Court construes it as a motion for judgment on the pleadings pursuant to Rule 12(c).  For the following reasons, the Defendant's motion for judgment on the pleadings is **GRANTED in part and DENIED in part**.

    I.      FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs allege the following facts, which the Court must accept as true.  The Plaintiff Rhett Daniels, his company Plaintiff Captiva RX, LLC ("Captiva"), and his brother Defendant Jimmy Daniels, have been involved in a series of disputes with one

- 2 -

another leading up to the present lawsuit.  One dispute occurred in August 2010 when Rhett retained Jimmy, an Assistant District Attorney in Bibb County, Georgia, to represent Rhett's company Viadem LLC, but Jimmy did not perform any requested legal services.  Their family feud escalated, so Rhett and his wife Elizabeth Trezza moved their family to Fort Myers, Florida to create separation.  There, Rhett reorganized Viadem LLC into Captiva with Macoven Pharmaceuticals, LLC as its primary customer.  Captiva also entered into a lucrative business arrangement with Argent Development Group, LLC.

On July 14, 2012, Rhett and Jimmy's father called Jimmy to inform him that the family was concerned for Rhett's mental health.  The father also asked the Lee County, Florida Sherriff's Office to check on Rhett.  Deputies visited Rhett's home and determined he was not a danger to himself or his family.  As the deputies were leaving, Fort Myers police officers arrived.  Jimmy had called the Fort Myers Police Department, told them he was an Assistant District Attorney, and said Rhett needed to be arrested.  Fort Myers officers arrested Rhett and involuntarily committed him at Lee County Vista Hospital ("Vista") pursuant to Florida's Baker Act, F.S.A. § 394.463.

Because the allegations in the police report were "so terrible," Rhett spent eleven days in involuntary commitment.  Rhett was unable to act as manager of Captiva while committed, and thus he was forced to tell business partners why he had been unresponsive.  As a result, Captiva lost nearly all business partners, including Macoven and Argent.  The Plaintiffs allege they lost business revenue, and Rhett claims he suffered emotional distress.

On August 2, 2012, Rhett, apparently not to be outdone by Jimmy, notified the Georgia Bar he was concerned for Jimmy's mental health. On August 17, 2012, Rhett emailed friends and family, with copies to Jimmy, to request they save any emails related to Jimmy's representation of Viadem. That same day, Jimmy responded by filing a police report in Bibb County alleging that Rhett's emails were intended to intimidate and harass and led Jimmy to fear for his personal safety. Rhett was unaware of this police report until January 23, 2014, when he was arrested at Hartsfield Jackson Airport in Atlanta. The Bibb County Solicitor's Office charged Rhett with criminal stalking based on the August 17, 2012 police report.

On July 14, 2014, Rhett and Captiva filed this lawsuit. They assert a claim against Jimmy for tortious interference with business relationships. Rhett also asserts claims for false imprisonment and intentional infliction of emotional distress and a defamation claim based on Jimmy's allegedly false statements in the August 17, 2012 police report. On August 29, 2014, Jimmy moved for judgment on the pleadings.

## II.   DISCUSSION

### A.   Standard of Review

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.,* 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach,* 250 F.3d 1299, 1301 (11th Cir. 2001)). "A motion for judgment on the pleadings is subject to

the same standard as is a Rule 12(b)(6) motion to dismiss." *Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta,* 864 F. Supp. 1274, 1278 (N.D. Ga. 1994).

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

**B.     Tortious Interference with Business Relationships**

The Defendant argues that Rhett and Captiva's claim for tortious interference with business relationships should be dismissed pursuant to the "two-dismissal rule."

*See* Fed. R. Civ. P. 41(a)(1)(B).  The Plaintiffs do not object to the Court taking judicial notice of facts relating to two prior actions filed in the Middle District of Florida.

On April 7, 2013, Rhett and his wife Elizabeth filed an action ("First Action") in the Middle District of Florida,[1] claiming that Jimmy tortiously interfered with business relationships.  Specifically, Rhett and Elizabeth alleged that Jimmy knew his efforts to get Rhett arrested would interfere with Captiva's business relationships.  On April 1, 2014, Rhett and Elizabeth voluntarily dismissed the First Action pursuant to Rule 41(a)(1)(A)(i).

On December 23, 2013, Captiva filed an action ("Second Action") in the Middle District of Florida,[2] claiming that Jimmy tortiously interfered with its business relationships.  Specifically, Captiva alleged that Jimmy knew his efforts to get Rhett arrested would interfere with its business relationships.  In a February 26, 2014 order, the court ruled that diversity citizenship was not properly pled and gave Captiva seven days to amend.  Instead of amending its complaint, Captiva voluntarily dismissed the Second Action without prejudice on March 6, 2014, pursuant to Rule 41(a)(1)(A)(i).  The court entered an order accepting the notice of voluntary dismissal.

Rule 41(a)(1)(A)(i) permits a plaintiff to voluntarily dismiss a complaint without a court order if he files "a notice of dismissal before the opposing party serves an answer or a motion for summary judgment."  The rule further provides that "[u]nless the notice … states otherwise, the dismissal is without prejudice.  But if the plaintiff previously dismissed any federal-or state-court action based on or including the same claim, a

---

[1] *Daniels and Trezza v. Daniels Jr.*, 2:14-cv-31 (M.D. Fla. 2013).

[2] *Captiva RX, LLC v. Daniels Jr.*, 2:13-cv-889 (M.D. Fla. 2013).

notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B). This is commonly referred to as the "two-dismissal rule." "A Rule 41(a)(1)(B) adjudication is ripe upon the filing of the third action." *Melamed v. Blue Cross of Cal.,* 2012 WL 122828, at *3 (C.D. Cal.).

The Defendant argues that though the Plaintiffs in the three lawsuits are nominally different, Captiva and Rhett have been the real parties in interest in all three lawsuits, each of which includes the same tortious interference claim. Thus, the two-dismissal rule bars that claim in this action. To the Court's knowledge, the Eleventh Circuit has not addressed whether a nominally different plaintiff who was a "real party in interest" in the prior actions is considered the same plaintiff for purposes of Rule 41. However, some jurisdictions have determined that the two-dismissal rule applies when parties are nominally different so long as they are the same real party in interest. *See, e.g.*, *Poloron Prods. Inc. v. Lybrand Ross Bros. & Montgomery*, 66 F.R.D. 610, 614 (S.D.N.Y. 1975), *rev'd on other grounds*, 534 F.2d 1012 (2d Cir. 1975). "[T]he two-dismissal rule should not be defeated by a change in the nominal parties, without a change in the real party in interest." *Id. See also Melamed*, 2012 WL 122828, at *6 ("As the three actions arose from the same common nucleus of operative facts and involve the same parties in interest, each of Plaintiff's state-law causes of action … are barred by application of Rule 41(a)'s 'two-dismissal rule.'"); *Matter of Burley*, 33 Wash. App. 629, 638, 658 P.2d 8,14 (1983) ("In order for the two-dismissal rule to apply[,] the plaintiff must be the same party in both actions or the plaintiff in the second suit must be in privity with the plaintiff in the first action to be dismissed.").

Reaching the same result, other jurisdictions have held that the two-dismissal rule may bar a claim under *res judicata* principles when a party to a lawsuit is in privity with the party who voluntarily dismissed two prior actions under Rule 41(a)(1)(A)(i). *See Manning v. S.C. Dep't. of Highway and Public Transp.*, 914 F.2d 44, 47 (4th Cir. 1990). This is because the second dismissal is an adjudication on the merits, and thus preclusion effects attach. *Id.* ("Because a notice of a second dismissal by the plaintiff serves as an 'adjudication upon the merits,' the doctrine of *res judicata* applies."); *see also Engelhardt v. Bell & Howell Co.,* 299 F.2d 480, 484 (8th Cir.1962). "*Res judicata* extends not only to named parties to action, but also to their privies." *Manning*, 914 F.2d at 48 (italics added). "The term 'privy,' when applied to a judgment or decree, means one so identified in interest with another that he represents the same legal right." *See Richburg v. Baughman*, 290 S.C. 431, 434, 351 S.E.2d 164, 166 (1986). Thus, where the plaintiffs are nominally the same or in privity with the named plaintiffs in all three lawsuits, the plaintiffs are the same for purposes of Rule 41.

Here, the Court agrees with the Defendant that the Plaintiffs in all three lawsuits are the same party in interest, or in privity with one another.[3] In the First Action, the

---

[3] This Court does not recognize a material difference between the concepts of "real party in interest" or "privity." If Party B is a real party in interest to the same legal rights of Party A in an action, then the two parties are in privity. *See Melamed*, 2012 WL 122828, at *4, *6 & n.1.

> Other avenues of relief were available to Plaintiffs in order to avoid the *res judicata* effect of a second voluntary dismissal. … As the three actions arose from the same common nucleus of operative facts and involve the *same parties in interest*, each of Plaintiffs' state –law causes of action in the 2011 cases … are barred by application of Rule 41(a)'s 'two-dismissal' rule. … The Court also dismisses Plaintiffs' argument that *res judicata*, and Rule 41(a), do not apply here because [Dr. Melamed] … was not a party to the WellPoint MDL. … '[G]iven the undisputed alignment of [Dr. Melamed's] interests with that of his company,' the Plaintiffs *stand in privity*.

*Id.* (italics added) (quoting *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).

plaintiffs were Rhett and his wife Elizabeth, and they alleged injury to Captiva because of tortious interference with Captiva's business relationships.[4]  Thus, Captiva was implicated as a real party in interest.  In the Second Action, the plaintiff was Captiva, whose President is Rhett, and the complaint alleged the same tortious interference claim as the First Action.[5]  Because Rhett's interests in Captiva's business relationships were closely intertwined with the interests of Captiva itself, Rhett, as a real party in interest, stood in privity with Captiva.  *See W. Radio Servs. Co.*, 123 F.3d at 1192.  Moreover, Rhett alleged the same injury in the First Action as Captiva alleged in the Second Action.  Thus, the Plaintiffs cannot rightly argue that Rhett and Captiva were not in privity with each other in the First and Second Actions.  In the present action, the Plaintiffs are Rhett and Captiva, alleging the same claim and injury as the tortious interference claims asserted in the First and Second Actions.[6]  In other words, all three lawsuits assert identical tortious interference claims, alleging the same injury to the interests of both Rhett and Captiva.  Thus, whether named explicitly or implicitly by

---

[4] "Plaintiff Daniels had a business relationship with Watson pharma on July 14, 2012.  Plaintiff Daniels also had other important business relationships at that time, including relationships with Libertas pharma, Pernix therapeutics, and Macoven pharma. … DANIELS, JR. knew that his actions would interfere with Plaintiff Daniels's business relationships.  DANIELS JR.'S actions were unjustified, because he knew that his statements to law enforcement were false." *Daniels and Trezza v. Daniels Jr.*, 2:14-cv-31 (M.D. Fla. 2013) (Doc. 2 at ¶¶ 66, 68).

[5] "Plaintiff had a business relationship[ ] with Watson pharma, Macoven pharma, Argent, Libertas pharma, Pernix therapeutics at the time when Defendant sent threatening messages to Rhett Daniels and Elizabeth Trezza and when Defendant made false statements to law enforcement. ... Defendant knew his threatening messages … [and] false and malicious statements to law enforcement would interfere with Plaintiff's business relationships." *Captiva RX, LLC v. Daniels Jr.*, 2:13-cv-889 (M.D. Fla. 2013) (Doc. 1 at ¶¶ 31, 33).

[6] "Plaintiff Captiva had business relationships with Macoven and Argent at the time when Defendant sent threatening messages to Rhett Daniels and Elizabeth Trezza and when Defendant made false statements to law enforcement.  ... Defendant knew his conduct would interfere with Plaintiff's business relationships.  Defendant's actions were unjustified and malicious, because he knew that his statements to law enforcement were false." (Doc. 1 at ¶¶ 73, 75).

being a real party in interest, the same legal right was represented by the Plaintiffs in each action.

Therefore, "[g]iven the undisputed alignment of [Rhett's] interests with that of his company," the Plaintiffs, as the same party in interest, stand in privity with one another. *See id.* Accordingly, because the same claim has been voluntarily dismissed pursuant to Rule 41(a)(1)(A)(i) twice before, the present claim for tortious interference with business relationships is barred by Rule 41(a)(1)(B).[7]

### C.   Defamation

The Defendant argues that Rhett's claim for defamation is barred by Georgia's statute of limitations. Pursuant to O.C.G.A. § 9-3-33, actions for injuries to the reputation "must be brought within one year after the right of action accrues." This statute of limitations begins to run on the date of the publication of the defamatory act. *See Davis v. Hosp. Auth. of Fulton Cnty*, 154 Ga. App. 654, 656, 269 S.E.2d 867, 870 (1980). "[A]ctions for injuries to the reputation ... must be brought within one year from the date of the alleged defamatory acts (regardless of whether or not plaintiff had knowledge of the act or acts at the time of their occurrence. ...)." *Id.* Because the alleged defamatory statements were published on August 17, 2012, the Defendant contends the defamation claim filed on July 14, 2014, is barred.

---

[7] The Plaintiffs argue that the two-dismissal rule is inapplicable because the Second Action was dismissed by court order, not voluntary dismissal. However, this argument mischaracterizes the events. Because Captiva failed to properly allege citizenship in the Second Action, the Court allowed Captiva the option to amend its complaint to avoid dismissal. Instead, Captiva filed a notice of voluntary dismissal and did so before the Defendant filed either an answer or motion for summary judgment. Notably, Captiva had other options, such as securing a Rule 41(a)(2) dismissal not subject to the two-dismissal rule. *See Melamed*, 2012 WL 122828, at *4. Nevertheless, Captiva dismissed the Second Action pursuant to 41(a)(1)(A)(i). The court's subsequent order merely accepted the voluntary dismissal: "Plaintiff's Notice of Voluntary Dismissal Without Prejudice (Doc. #15) is **GRANTED**." *Captiva RX, LLC v. Daniels, Jr.*, 2:13-cv-889 (M.D. Fla. 2013) (Doc. 16). The notice of voluntary dismissal would have still gone into effect with or without a subsequent order "granting," or accepting, the notice.

In response, Rhett argues Florida's two-year statute of limitations for defamation applies pursuant to *lex loci delicti*. (Doc. 11 at 10). Under the doctrine of *lex loci delicti*, "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809, 621 S.E.2d 413, 414 (2005). Specifically, Rhett argues Florida law should apply because the injury occurred in Florida, and thus the tort was committed in Florida. (Doc. 11 at 9).

In diversity cases, the court applies the choice-of-law rules of the forum state. *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). In Georgia, "[t]he doctrine of *lex loci delicti* has served the resolution of conflict of laws issues in tort actions … for nearly 100 years." *Dowis*, 279 Ga. at 811. Therefore, the Court agrees that the doctrine of *lex loci delicti* applies, but agrees with the Defendant that Georgia law applies under this doctrine.[8] In actions for defamation, the place where the tort was committed is the place where the publication occurred. *See Triguero v. ABN AMRO Bank N.V.*, 273 Ga. App. 92, 95, 614 S.E.2d 209, 212 (2005) ("[T]he law of the jurisdiction where the publication occurs determines the rights and liabilities of the parties."); *see also* Restatement (Second) of Conflict of Laws § 149 (1971) ("In an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties. ..."). Here, the alleged defamatory statements were published in a sworn statement at the Bibb County's Sheriff's Office. (Doc. 1 at 9). Thus, Georgia's one year statute of limitations for

---

[8] The Court disagrees with the Defendant that a statute of limitations is a matter of procedural law and not substantive law and that therefore the doctrine of *lex loci delicti* does not apply. *See Johnson v. American Meter Co.*, 412 F.Supp.2d 1250, 1263 (N.D. Ga. 2004) (citing *Walker v. Armco Steel Corp.,* 446 U.S. 740, 752 (1980)); *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 110 (1945) ("State statutes of limitations are substantive laws."). Nevertheless, as explained above, Georgia law for defamation claims still applies pursuant to *lex loci delicti* because the tort occurred in Georgia in this case.

defamation actions applies. Because the action for defamation was filed on July 14, 2014, more than one year from the publication on August 17, 2012, the defamation claim is barred.

### D. Intentional Infliction of Emotional Distress

The Defendant argues that Rhett failed to state a claim for intentional infliction of emotional distress as a matter of law.[9] As stated above, pursuant to *lex loci delicti*, "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis*, 279 Ga. at 809. *See also Risdon Enters., Inc. v. Colemill Enters., Inc.*, 172 Ga. App. 902, 903, 324 S.E.2d 738, 740 (1984) ("How do we determine the lex loci delicti where the tort is transitory in nature? The general rule is that 'the place of wrong, the locus delicti, is the place where the injury sustained was suffered rather than the place where the act was committed. …'") (quoting 15A C.J.S. Conflict of Laws § 12(2)(b), 459). Because the emotional distress was inflicted in Florida, Florida law applies.

Under Florida law, to recover for intentional infliction of emotional distress, a plaintiff must allege: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct of the defendant caused the suffering; and, (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d. 277, 279 (Fla. 1985). "While there is no exhaustive or

---

[9] The Defendant argues that the claim for intentional infliction of emotional distress is a disguised defamation claim, and thus should be barred by Georgia's statute of limitations. However, the statements alleged to support the emotional distress claim are distinct from the statements alleged to support the defamation claim. Consequently, the Court does not construe the emotional distress claim as a defamation claim.

concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Merrick v. Radisson Hotels Int'l, Inc.*, 2007 WL 1576361, at *4 (M.D. Fla.). "The Restatement [and] the commentators … all agree that outrageousness is more likely to be found where some relationship exists that gives the defendant actual or apparent authority over another or power to affect his interests." *Lashley v. Bowman*, 561 So. 2d 406, 409-10 (Fla. Dist. Ct. App. 1990).

Here, Rhett specifically alleges that the Defendant abused his power as an Assistant District Attorney to get Rhett arrested and, without personal knowledge, made allegations to the Fort Myers police "so terrible" to ensure Rhett was involuntarily committed. This conduct caused severe emotional distress. Therefore, taking the allegations as true and drawing all reasonable inferences in favor of the Plaintiff, the Court finds that the Plaintiff sufficiently states a claim for intentional infliction of emotional distress under Florida law.

### E.  False Imprisonment

The Defendant argues that Rhett failed to state a claim for false imprisonment because he did not allege specific facts to show an unlawful detention. (Doc. 12 at 6). As stated above, Georgia follows the doctrine of *lex loci delicti* pursuant to which "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis*, 279 Ga. at 809. Since the alleged false imprisonment occurred in Florida at Vista Hospital, Florida law applies. *See* Comments to Restatement (Second) of Conflict of Laws § 145 ("So in the case of false imprisonment, the local law of the state where the Plaintiff was imprisoned will usually apply."). Under Florida law, "[f]alse imprisonment is the unlawful restraint of a person against his will, the gist of which

action is the unlawful detention of the plaintiff and deprivation of his liberty." *Johnson v. Weiner*, 155 Fla. 169, 171, 19 So. 2d 699, 700 (1944). "To be liable in an action for false imprisonment, one must have personally and actively participated therein, directly or by indirect procurement. All those who, by direct act or indirect procurement, personally participate in or proximately cause the false imprisonment and unlawful detention are liable therefor[]." *Id.* at 701.

Here, Rhett specifically alleges that the Defendant committed false imprisonment when his false statements to the police led law enforcement to "Baker-Act" Rhett. Pursuant to the Baker Act, "[a] law enforcement officer shall take a person who appears to meet the criteria for involuntary examination into custody and deliver the person or have him or her delivered to the nearest receiving facility for examination. ..." F.S.A. § 394.463(2)(a)(2). "A claim for the tort of false imprisonment can be asserted based on allegations that a person was involuntarily held without compliance with the Baker Act." *Liles v. P.I.A. Medfield, Inc.*, 681 So. 2d 711, 712 (Fla. Dist. Ct. App. 1995). Rhett does not explicitly allege how the detention was not in compliance with the Baker Act and thus unlawful. However, unlawful detention can reasonably be inferred based on the allegation the Fort Myers police officers "Baker-Acted" Rhett immediately after the Lee County Sheriff's Officers had arrived, determined he was not a danger to himself or others, and were in the process of leaving. (Doc. 1 at ¶¶ 27-34). As discussed above, law enforcement officers may take a person into custody pursuant to the Baker Act if he "appears to the meet the criteria for involuntary examination." Additionally, it can reasonably be inferred that the Defendant actively participated in Rhett's arrest by calling Fort Myers police, giving them information of which he allegedly

had no personal knowledge, and telling the police Rhett should be arrested.  Therefore, at this stage in the litigation, the Court finds that the Plaintiff sufficiently states a claim for false imprisonment under Florida law.

### III.     CONCLUSION

For the foregoing reasons, the Defendant's motion for judgment on the pleadings is **GRANTED** for the claims for tortious interference with business relationships and defamation.  The Defendant's motion is **DENIED** for the claims for intentional infliction of emotional distress and false imprisonment.

**SO ORDERED**, this 23rd day of October, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT